## WILLIAM DRURY

*v.*

## CHARLES C. P. HOLDEN.

*Filed at Ottawa May 12, 1887.*

1.  PURCHASE *subject to incumbrances, or under an agreement to discharge incumbrances—merger.* Where a party purchases land which is incumbered to secure the payment of indebtedness, and assumes the payment of the same as a part of the purchase price, the premises purchased will, in his hands, become primarily liable for such indebtedness, and it will be his duty to pay it.

2.  And the rule will be the same although there be no formal assumption of the indebtedness, if the purchase be made expressly subject to the incumbrance, and the amount of the indebtedness thereby secured is included in and forms a part of the consideration of the conveyance.

3.  Where a person in exchange of other property takes a warranty deed of lots, subject to a deed of trust thereon, giving in other property the value

fixed upon the lots, less the amount of the incumbrance, it will be his duty to discharge such incumbrance, and if he purchases the same in the name of another, a court of equity will treat his purchase as a payment, and apply the doctrine of merger. Such purchase will operate as an extinguishment of the debt secured by the trust deed.

4. COVENANTS FOR TITLE—*how far restricted to the estate actually conveyed—as, in the case of a purchase subject to incumbrances.* Where a deed conveys lots subject to an incumbrance thereon, the covenants of warranty of title and against incumbrances will extend only to the estate actually conveyed, which is the equity of redemption.

5. A deed for lots, after the description, contained this clause, "subject to the following incumbrances on said described premises," describing them, after which followed full covenants of warranty of title, and that the premises conveyed were free and clear from all incumbrances, containing no exceptions: *Held,* that the covenants applied only to the estate conveyed, which was not the lots absolutely, but subject to the incumbrances, and that the real covenant was, that, otherwise than subject to incumbrances named, the lots were free from all incumbrances, and that the grantor would warrant and defend the title.

6. PAROL EVIDENCE—*to show the actual consideration of a deed.* The owner of certain parcels of land, holding the title subject to two deeds of trust given thereon by a prior owner, conveyed the same, by warranty deed, for the expressed consideration of $40,000, in exchange for other property, but the deed was made subject to the trust deeds: *Held,* that parol evidence was competent to show that the lots were taken at $40,000, less the amount of the incumbrances thereon, the grantee paying only the difference in other property.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER A. HARKER, Judge, presiding.

Mr. J. M. H. BURGETT, for the appellant:

A vendor's property must be exhausted before recourse can be had to the vendee. If he sells property subject to an incumbrance, his other property is to be first taken. *Cooper* v. *Bigley,* 13 Mich. 463; *Wadsworth* v. *Lyon,* 93 N. Y. 201; *Barnes* v. *Mott,* 64 id. 397; *McCloskey* v. *O'Brien,* 16 W. Va. 791; *Wolbert* v. *Lucas,* 10 Pa. St. 63; *Beddoch* v. *DeWitt,* 43 id. 346; *Iglehart* v. *Crane,* 42 Ill. 261; *Marshall* v. *Moore,* 36 id. 321; *Hurd* v. *Eaton,* 28 id. 122; *Wise* v. *Harris,* 13 id. 41.

The merger of an incumbrance, when no intention is manifested by the parties, will depend upon the interest of the person acquiring the title. *Campbell* v. *Carter*, 14 Ill. 286; *Insurance Co.* v. *Corn*, 89 id. 170; *Shaver* v. *Williams*, 87 id. 469; *McCloskey* v. *O'Brien*, 16 W. Va. 791.

When a mortgagee acquires title to a part of the mortgaged premises, if the mortgage ought to be paid wholly out of the part retained by the mortgagor, then it may be enforced against the same. *James* v. *Morey*, 2 Cow. 246; *Casey* v. *Buttolph*, 12 Barb. 637; *Clifft* v. *White*, 12 N. Y. 519; *Smith* v. *Roberts*, 91 id. 470; *Wilhelmi* v. *Leonard*, 13 Iowa, 330; *Baker* v. *Flood*, 103 Ill. 474; *Tucker* v. *Crowley*, 127 Mass. 400.

Unless there be two estates in the same person in the same land, there is not any estate in that person to merge or occasion a merger. And, generally, where different tracts of land are mortgaged, whether by the same or different mortgages, to secure the same debt, if the mortgagor has sold one tract of the land so mortgaged, and has not seen fit, in making such sale, to charge such tract with the payment of any part of the incumbrance, the purchaser or his grantee may take an assignment of the mortgage, and enforce its full payment at law by the mortgagor directly, or out of those tracts of the land still owned by him. Of course, the assignment works a release of the lien of the mortgage as to that part of the premises owned by the assignee, for a man can not hold a mortgage on his own property. But there is neither payment nor merger, and, therefore, no extinguishment, even *pro tanto*, of the mortgage debt. The assignment has the same effect as a release by the holder of a mortgage, of part of the land covered by it. It makes no difference to the mortgagor whether one person or another owns it, and it does not change his relations to the purchaser or the holder of the mortgage. *Clifft* v. *White*, 12 N. Y. 519; *Smith* v. *Roberts*, 91 id. 470; *Barnes* v. *Mott*, 64 id. 397; *Skeel* v. *Sproker*, 8 Paige, 182; *Casey* v. *Buttolph*, 12 Barb. 637; *Knickerbocker* v. *Boutwell*, 2

Sandf. Ch. 319; *James* v. *Morey,* 12 Cow. 246; *Wilhelmi* v. *Leonard,* 13 Iowa, 330; *Tucker* v. *Crowley,* 127 Mass. 400; *Bruner's Appeal,* 7 W. & S. 269; *Ziegley* v. *Long,* 2 Watts, 205.

The maker of the deed to appellant covenants to defend the lots against the holders of all incumbrances. Making the deed subject to them was not to fasten a liability on appellant, or to make his lots primarily liable for the payment of the incumbrances. *Lewis* v. *Day,* 53 Iowa, 575; *Slater* v. *Breese,* 36 Mich. 77; *Foliffe* v. *Collins,* 21 Mo. 338; *Estabrook* v. *Smith,* 6 Gray, 572; *Spurr* v. *Andrews,* 6 Allen, 420; *Strong* v. *Converse,* 8 id. 557; *Tucker* v. *Crowley,* 127 Mass. 400; Jones on Mortgages, secs. 735, 736, 744, 865.

Messrs. Fay & Griggs, for the appellee:

When a party purchases premises which are incumbered to secure the payment of indebtedness, and assumes payment of the indebtedness as a part of the purchase money, or if he purchases the premises subject to the incumbrance, and the amount of the indebtedness thereby secured is included in and forms a part of the consideration for the conveyance, the premises purchased are in his hands a primary fund for the payment of the debt, and it is his duty to pay the debt. *Henderson* v. *Bellew,* 45 Ill. 325, and cases cited; *Lilly* v. *Palmer,* 51 id. 331; *Rogers* v. *Herron,* 92 id. 582; *Russell* v. *Pistor,* 3 Seld. 171; *Halsey* v. *Reed,* 9 Paige, 452.

When mortgaged premises are sold subject to the mortgage, and the conveyance is made expressly subject to the incumbrance, with full knowledge of the amount of the mortgage debt, and the mortgage debt is included in and forms a part of the consideration of the conveyance, if such purchaser afterward purchases the mortgage, it is thereby paid and discharged, and must be so regarded, and is not recoverable against the mortgagor. *Booker* v. *Anderson,* 35 Ill. 66; *Comstock* v. *Hitt,* 37 id. 542; *Lilly* v. *Palmer,* 51 id. 331; *Fowler*

v. *Fay*, 62 id. 375; *Essley* v. *Sloan*, 116 id. 399; *Sands* v. *Church*, 6 N. Y. 347.

The existence of the debt is essential to the life of the trust deed or mortgage, and whatever extinguishes or bars the debt determines and extinguishes the power of sale in the instrument, and the instrument itself. And in such a case, if a sale has been made, a court of equity may properly exercise jurisdiction to set it aside and remove the cloud. *Redmond* v. *Packenham*, 66 Ill. 434; *Boyd* v. *Keighan*, 94 id. 543; *Wood* v. *Colvin*, 2 Hill, 566; *Cameron* v. *Irwin*, 5 id. 272; *Kennedy* v. *Northrup*, 15 Ill. 149.

When the incumbrance forms part of the purchase money, or price to be paid, the property will be primarily liable in the hands of the purchaser. *Fowler* v. *Fay*, 62 Ill. 367; *Halsey* v. *Reed*, 9 Paige, 431; *Comstock* v. *Hitt*, 37 Ill. 444; *Essley* v. *Sloan*, 116 id. 399.

In his purchase appellant retained in his hands $26,100, as a fund to pay off the incumbrances. Having received the benefit of the incumbrances by deducting this amount from the price he agreed to pay, he ought to pay them. *Essley* v. *Sloan*, 116 Ill. 399.

The payment of the debt, or the purchase of it by Drury, or by Eoff, as his agent, or with his money, operated to pay, discharge and extinguish the debt. *Lilly* v. *Palmer*, 51 Ill. 331.

If there is no debt there can be no valid sale, but the power of sale and the trust deed having, by the extinguishment of the debt, become determined and extinguished, the sale was void. *Redmond* v. *Packenham*, 66 Ill. 437; *Insurance Co.* v. *Jackson*, 83 id. 302.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal by Drury, defendant in the court below, from a decree setting aside a sale and deed to him of certain premises in Charles N. Holden's subdivision in Chicago, known

in the record as the "barn lot," made under the power in a trust deed given by appellee, Charles C. P. Holden, to secure the payment of his note for $6500, to one Kelly.

The record shows that on April 23, 1869, Holden executed to Sanford B. Perry, as trustee, a deed of trust on lots 1, 2, 3, 4, 5 and 6, in C. C. P. Holden's re-subdivision, etc., to secure an indebtedness owing from him to the Jonathan Bevor estate, for the sum of $19,600. September 20, 1871, he executed to said Perry, as trustee, another trust deed upon the same premises, except lot 6, to secure the payment of his note to Edward A. Kelly, for the sum of $6500. By an agreement between the parties, Perry released from the last mentioned trust deed said lot 1, and at the same time, January 31, 1873, in the place of the security so released, Holden executed to Perry a trust deed on the "barn lot," so called, to secure the same note of September 20, 1871, for $6500. November 16, 1874, Holden conveyed said lots 2, 3, 4 and 5, to William H. Holden, who conveyed to Warren, he to Elliott, and the latter to Isaac M. Daggett, who, on April 12, 1876, conveyed the same to Drury, the appellant. This deed to Drury purported, for and in consideration of the sum of $40,000 in hand paid by the said party of the second part, (Drury,) to grant bargain, sell and convey unto Drury said lots 2, 3, 4 and 5. Immediately after the description of the lots conveyed, the deed contained the following clause : "Subject to the following incumbrances on said described premises : one for the principal sum of $19,600, and the other for the principal sum of $6500. The first of said incumbrances is dated April 23, 1869, and the second (the one for $6500) is dated September 21, 1871." Following thereafter, the deed contained full covenants of warranty of title, and that the premises conveyed were free and clear from all incumbrances, there being no exceptions whatever to the covenants.

Daggett, the grantor, testified that he made the deed, with deeds of three other pieces of property, in exchange for prop-

erty owned by Drury; that in the exchange, said lots 2, 3, 4 and 5 were estimated as worth $40,000; that the equity of redemption was traded for, and its value was computed as being the difference between $40,000 and the amount of the incumbrances; to make the amount of consideration named in the deed, the amount of the incumbrances was included with the value of the equity; that Drury knew the property was incumbered, as the deed shows he took it from him subject to incumbrances; that he, Daggett, bought this property subject to incumbrances, but did not assume any, and he put it off on Drury just as he got it; that there was no agreement by Drury to pay the incumbrance,—nothing said about his paying them; that he took it subject to incumbrances; that the incumbrance formed part of that $40,000; that he simply agreed to take this property mentioned in the deed, on the basis of $40,000, in making up the trade.

It was admitted, that in April, 1879, one Eoff purchased the $6500 note with money furnished him by Drury therefor. September 23, 1879, Perry, the trustee, after advertising the barn lot for sale, under the trust deed of January 31, 1873, made a sale of the same to Drury, for the sum of $1000. The net amount from the sale ($945) was indorsed on the note, and Perry, as such trustee, made a deed of the lot to Drury, pursuant to the sale. The court below found that the premises, at the time of the sale, were freed and discharged of all indebtedness secured by the trust deed; that the sale and trustee's deed were void, and by its decree set them aside.

It is insisted by appellant, that the effect of the decree in this case is to decide that where two tracts of land are mortgaged, by separate mortgages, to secure the same debt, and one tract is afterwards conveyed away by the mortgagor, a remote grantee of the equity of redemption of the tract so conveyed away is bound to pay the entire mortgage debt, to the relief of the other tract, even though his grantor was under no obligation to pay such debt, and he has entered

into no engagement to pay it; that the decree is in direct violation of the rule requiring mortgaged lands to be sold for the payment of the mortgage debt in the inverse order of their alienation by the mortgagor. This statement overlooks the fact that the conveyance of the lots to Drury was made expressly subject to the incumbrance. Admitting the general rule to be as stated by appellant, the inquiry arises as to the effect of this latter fact in modifying the rule.

It is well established, that when a party purchases premises which are incumbered, to secure the payment of indebtedness, and assumes the payment of the indebtedness as a part of the purchase money, the premises purchased are in his hands a primary fund for the payment of the debt, and it is his duty to pay it. (*Lilly* v. *Palmer*, 51 Ill. 331; *Russell* v. *Pistor*, 3 Seld. 171.) And the rule is the same, although there be no assumption of payment of the indebtedness, if the purchase be made expressly subject to the incumbrance, and the amount of the indebtedness thereby secured is included in and forms a part of the consideration of the conveyance. *Lilly* v. *Palmer, supra; Comstock* v. *Hitt,* 37 Ill. 542; *Fowler* v. *Fay,* 62 id. 375; *Russell* v. *Pistor, supra; Ferris* v. *Crawford,* 2 Denio, 598.

It is said the deed from Daggett to Drury contained full covenants of warranty, to which there was no exception; that thereby Drury's grantor covenanted that he would warrant and defend the lots conveyed, against the holders of all incumbrances. The covenants extended only to what was conveyed, and that was not the lots absolutely, but the lots subject to the incumbrance. The real covenant was, that otherwise than as subject to the incumbrances named, the lots were free from all incumbrances, and that the grantor would warrant and defend the title.

It is said, also, that there was not, here, a cash sale of the lots to Drury, but an exchange of property, and that the case is not one where the entire interest in property was pur-

chased at a fixed price, and then the purchaser was allowed
to retain in his hands, for the payment of an incumbrance,
an amount of the purchase price equal to the amount of the
incumbrance; but it is, as we view it, as shown by Daggett's
evidence, just such a case, with the exception of its being
property instead of money, which was thus held and retained
in Drury's hands. We understand, from Daggett's testimony,
that the lots conveyed to Drury were of the value, unincum-
bered, of $40,000; that it was the equity of redemption that
Drury traded for, and its value was computed in the exchange
as being the difference between $40,000 and the amount of
the incumbrances. In thus obtaining the lots, Drury had
and retained, in his property, the exact amount of the incum-
brances ($26,100) as a fund for the payment thereof, in effect.
We deem it immaterial whether the purchase was for cash
or by exchange of property.

It is objected that oral evidence was inadmissible to show
that the amount of the incumbrances was deducted from the
amount of the purchase price, and allowed to Drury. The
evidence being in regard to what constituted the consideration
of the deed to Drury, and that the amount of the incum-
brances was included in and formed a part of the considera-
tion, was clearly competent, under the rule which permits
parol evidence upon such subject of the consideration of a
deed.

If, then, the mortgagor himself had made this deed to
Drury, we are satisfied that, under the rules and authorities
above referred to, the lots conveyed to Drury would be the
primary fund for the payment of this mortgage or trust deed
in question. Does it differ the case that the deed was made
by a grantee from the mortgagor, of the equity of redemp-
tion, and such grantee not being personally liable for the
mortgage debt? It is insisted that it does—that appellee,
the mortgagor, was a stranger to Daggett, who conveyed to
Drury, the appellant, as well as he was to Drury, and would

have no right to have such lots conveyed to Drury applied to the payment of the mortgagor's debt. The deed to Drury was made expressly subject to the incumbrances. It appears that the mortgage debt was included in and formed a part of the consideration of the conveyance. It was seen by both parties that Drury would have the mortgage to pay. It was expected that he would pay it, and Drury, in effect, retained from the purchase price the amount of the incumbrance, to pay it. If, then, Drury should afterwards pay the mortgage debt, it would be but just that he should do so; it would be in accordance with the arrangement between him and Daggett; it would, in truth, be but the payment of part of the purchase price of the lots. That price he ought to pay. There was, in effect, property retained in his hands to pay the mortgage debt, and it would seem inequitable for him to appropriate it to his own use, and not apply it, as contemplated, to the mortgage debt. That in paying the mortgage debt there comes an incidental benefit to the mortgagor, in the discharge of his debt, is a benefit which he equitably may enjoy.

In an equitable aspect, we think, in the effect, it should be regarded no differently than if the mortgagor, instead of Daggett, had made the deed to Drury. This conclusion, making the lots in Drury's hands conveyed to him by Daggett a primary fund for the payment of the mortgage debt, renders Drury's purchase of the mortgage note to be equivalent to the payment of it; and may, too, well enough present a case for the application of the doctrine of a merger where the equity of redemption and the mortgage meet in the same person.

We think the decree of the circuit court should be affirmed.

*Decree affirmed.*