Bernard J. Grossman, Appellee, v. Bernard Lifshitz
et al.
Appeal of Abe Byer and Jennie Byer, Appellants.

Gen. No. 34,647.

Opinion filed May 13, 1931.

FISCHEL, KAHN, HEART & EPSTEIN, for appellants.

CHARLES RUDOLPH and BERNSTEIN, ZOLLA & BERN-STEIN, for appellee; FRED BERNSTEIN and HAROLD M. GOLDSTEIN, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

This appeal presents for review an order of the superior court of Cook county, denying the motion and petition of Abe Byer and Jennie Byer, defendants herein, to vacate a judgment by confession theretofore entered against them on November 2, 1928, in the sum of $26,236.62.

Their petition, filed January 15, 1930, and subsequently amended, sets forth in substance that judgment was entered on the second day of November, 1928, as heretofore stated, upon 10 principal promissory notes aggregating $22,000, which together with interest and attorney's fees, comprises the amount of the judgment; that the petitioners, Abe Byer and Jennie Byer, acquired an undivided interest in the premises described in the petition by warranty deed dated May 20, 1924; that thereafter petitioners, together with Bernard Lifshitz, Rose Lifshitz, his wife, Abraham Bogaslowsky and Rebecca Bogaslowsky, his

wife, as comakers, who were cotenants and jointly interested in the premises described in the petition, made and executed their 37 principal promissory notes, payable in the total sum of $35,000, all bearing date July 25, 1924, payable to their own order, and by them indorsed, in the various denominations set forth in the petition; that in order to secure the payment of the indebtedness evidenced by their notes, petitioners and their comakers conveyed the premises described in the petition by their trust deed to LeRoy F. Harris, as security for said indebtedness; that subsequently on July 3, 1925, petitioners by their warranty deed of that date conveyed their undivided interest in the premises to one Valeska de Molchin, as grantee; that said Molchin by her deed dated November 4, 1926, conveyed all of her right, title and interest in and to the premises in question to Emma Seibt, as grantee; that Emma Seibt and said Molchin upon the respective conveyances to them took possession of the premises, collected all of the rents, revenues and profits therefrom, and were in entire charge and control thereof; that said Emma Seibt died, testate, on May 12, 1927, leaving her surviving Hermann Seibt, her husband, and Irma Margaret Seibt Anderson, wife of James Anderson, her daughter, as her only heirs at law; that in and by the last will and testament of said Emma Seibt, which was subsequently admitted to probate in the probate court of Cook county, Illinois, all of her estate was devised and bequeathed unto her husband, Herman Seibt, who was appointed and qualified as executor under her last will and testament, and to whom letters testamentary were duly issued out of the probate court of Cook county; that on April 7, 1928, Herman Seibt, by his executor's deed of that date, conveyed the premises described in the petition to Joseph Urban and Anna Urban, his wife, as joint tenants, and that in the purchase and acquisition of

said premises the grantees accepted and received credit for the lien then existing by virtue of the recorded trust deed of the petitioners, and their comakers, of which the said Urban and his wife had knowledge and were informed, and that in order to remove any doubt as to the effectual conveyance and investiture of title in said Urban and his wife, Herman Seibt, a widower, Irma Anderson and James Anderson, her husband, as the only heirs at law of Emma Seibt, deceased, by their quitclaim deed dated April 7, 1928, conveyed and quitclaimed whatever interest they may have had in the premises to said Joseph Urban and Anna Urban, his wife; that the title to the premises in question was conveyed to and acquired by said Urban and his wife under the terms and conditions of a certain escrow agreement dated April 9, 1928, by the terms of which notes numbered 27 to 37, inclusive, executed by petitioners, and being the notes upon which the judgment herein was entered, and the trust deed given to secure the payment of same, became the property and were delivered to and were owned and held by the said Joseph Urban and Anna Urban, his wife; that said notes and trust deed were acquired by the Urbans after the notes had matured and were delivered to and held and owned by the Urbans as grantees of the premises, and the debt and lien of said notes thereby became discharged by and were merged in the title to the premises conveyed to said Urban by the respective deeds of Herman Seibt, Irma Anderson and James Anderson, her husband.

The petition further alleges that thereafter, in order to secure the payment of his certain collateral promissory note, dated April 11, 1928, in the sum of $2,750.00, due three months after date and payable to the order of Progressive Bond and Mortgage Company, said Joseph Urban deposited and delivered as collateral

security to the payee therein named the past due notes of the petitioners numbered 27 to 37, inclusive, and the trust deed given to secure the payment of the same, which had become discharged by operation of law and were no longer the obligation of petitioners; that upon the maturity of the collateral promissory note payable to the Progressive Bond and Mortgage Company, said Urban caused the same to be paid and marked canceled, and thereupon the series of past due promissory notes made by the petitioners were returned uncanceled and unreleased to said Urban, who repossessed himself of the same and held them; that subsequently upon a date in excess of three months after the 11th day of April, 1928, and unknown to petitioners, said Joseph Urban executed another collateral principal promissory note for the sum of $6,893, payable at a time in the future unknown to petitioners, and again delivered petitioners' past due notes numbered 27 to 37, inclusive, and the trust deed securing the same, as additional security for said collateral note.

It is further alleged that petitioners were entirely ignorant and without knowledge or information of the deposit of their notes as collateral to the principal promissory note of said Urban and of the several extensions of time of payment of their notes after their respective dates of maturity, and were at no time advised of the failure of the holders of title to the premises conveyed by them to cancel, void and mark paid their said notes upon the respective dates of their maturity; that at the dates when the several notes described in the petition became due, the premises conveyed by trust deed to secure the payment of the same were more than ample and sufficient security for the payment of said notes and the rents and revenues arising therefrom would have been sufficient and

ample to discharge and pay petitioners' obligation, which in fact had already been paid and discharged; that after the various extensions of payment subsequent to the maturities of petitioners' notes, the premises conveyed by trust deed as security became greatly depreciated and reduced in value, and between the date of the maturity of note number 37 and the time when petitioners first became aware of the entry of said judgment, the premises secured had depreciated and deteriorated in value to a sum in excess of the indebtedness due to plaintiff from Joseph Urban.

The petition further alleges that the facts and circumstances set forth therein first came to petitioners' knowledge, attention and information upon about the 15th day of October, 1929, and the knowledge of the entry of the judgment against petitioners first became known to them about the 10th day of July, 1929; that as soon as they were apprised of the entry of the judgment petitioners communicated and began negotiations with attorneys representing the plaintiff in an effort to amicably vacate and set aside the judgment entered against them, but without avail, and thereupon on November 16, 1929, petitioners filed a bill in chancery in the circuit court of Cook county, being Gen. No. B-192040, wherein they prayed, among other things, for a temporary injunction to restrain plaintiff herein from in any manner attempting to enforce the collection of the judgment that had theretofore been entered against petitioners, but that upon demurrer filed to the bill of complaint, the circuit court was of the opinion that complainants' remedy had been misconceived, and they accordingly proceeded in the exercise of diligence in seeking relief from the judgment entered against them by way of petition to have the judgment vacated; that the notes upon which judgment was entered against petitioners had ceased to be their obligation prior to the entry of the judg-

ment herein; that plaintiff Bernard Grossman acquired petitioners' notes after their respective dates of maturity, and was charged with the infirmities of said notes and with knowledge of the release and discharge of the legal obligation and liability of petitioners thereon; that plaintiff's judgment is wholly inequitable, unjust and constitutes fraud against petitioners, and that the same should have been vacated, pursuant to the filing and hearing of the petition.

The principal question presented for decision is whether defendants' petition sufficiently sets forth a defense to plaintiff's claim. With regard to this question, it is first urged that the vesting of the legal estate in Urban by the quitclaim deeds of Herman Seibt, individually and as executor, Irma Anderson and James Anderson, and his ownership of the mortgage upon the same title, effected a merger in him and extinguished. in law, the indebtedness evidenced by the notes described in the mortgage and upon which judgment was taken. It is contended that a merger in law results from these circumstances, regardless of the intention of the parties, and numerous cases are cited to support the doctrine.

In *Lilly v. Palmer*, 51 Ill. 331, an action in assumpsit was brought upon two promissory notes secured by a mortgage. The plaintiff acquired these notes at the time that he was the owner of the property secured by mortgage on his land. The court held that the conveyance to plaintiff made the land the primary fund for the payment of the notes, and when plaintiff took the deed he became the owner of that fund and then stood in the attitude of a mortgagee who had effected a strict foreclosure.

In *Hester v. Frary*, 99 Ill. App. 51, suit was brought to recover principal and interest due upon a promissory note, which the defendant assumed to pay as grantee of certain property which had been mortgaged

to secure the payment of the indebtedness evidenced by the note in question. There also plaintiff had acquired the note at the same time that he held the fee to the property. Under a proposition of law submitted to the court, it was held that a person who owns land with an outstanding mortgage lien thereon, created by a predecessor in title, may buy such mortgage lien and keep it alive, and that it does not merge in the fee title unless there is *an intention* that it should so merge. The Appellate Court held that the proposition should have stated the rule conversely, i. e., that there is under the facts stated a merger unless there is an intention shown to the contrary, and said:

"For this purpose, we are of opinion that the intent to prevent a merger could not be presumed even in a suit in equity, and certainly not in an action at law, from a mere lack of any intention expressed that there should be a merger. . . . The doctrine of prevention of merger is a rule of equity jurisprudence, and this action is at law. Appellant is no party to the note sued on by reason of having executed or indorsed it. The only ground upon which this action in assumpsit could lie against him, is that he has assumed the indebtedness evidenced by the note. But the debt is extinct if there was a merger, and the recovery could not in that event be had."

In *Maulding v. Sims*, 213 Ill. App. 473, an action in assumpsit was brought by plaintiff upon two promissory notes. The defense interposed was that the notes were secured by mortgaged premises, acquired in a foreclosure proceeding by plaintiff, who became the owner of the property through acquisition by foreclosure. In its opinion the court stated the question involved to be whether "the estate created by the mortgages covering the two notes here sued on merged with the estate received by appellant from the master in

chancery," and whether "the indebtedness here sued on became merged or wiped out at that time." In answer to this inquiry the court, quoting from *Donk Bros. & Co. v. St. Louis Glucose and Grape Sugar Co.,* 17 Ill. App. 369, said:

" 'Purchasing the property in this manner, it became in the hands of appellant company the primary fund between all the parties out of which these liens should be discharged (*Comstock v. Hitt,* 37 Ill. 542; *Fowler v. Fay,* 62 Ill. 375), as fully as though the grantee had assumed their payment in the deed, this latter assumption by a grantee not having any greater effect to subject the property to such payment than the former, but giving to the lien holder a personal action against the grantee. . . . In either case, the company, in order to become invested with the entire estate in the property, must see to it that the incumbrances are discharged, and as between it and its vendor, the primary duty was cast upon it to do so (*Shuler v. Hardin,* 25 Ind. 386); and it is said in *Cherry v. Monro,* 2 Barb. (N. Y.) Ch. 618, where the equity of redemption was purchased subject to an outstanding mortgage, that the purchaser had no legal right to have the mortgage debt charged upon the mortgagor personally instead of charging it upon the land upon which it was charged by the mortgage.' " The court then continuing, said: "After the sale to him, appellant took an assignment of the notes and these mortgages, and in law it amounted to a payment therefor, it being a matter of indifference whether the indebtedness be paid directly, or whether an assignment is taken to the person who holds the fee."

The courts recognize a distinction in the doctrine contended for between suits at law and in chancery proceedings. This is well stated in the case of *Rear-*

*don v. Taft,* 235 Ill. App. 75, wherein the court in its opinion said:

"It is well settled that, at law, when a greater or lesser, or a legal and equitable estate, coincide in the same person, the lesser, or the equitable estate, is immediately merged and annihilated. . . . It is true that the question, whether or not a merger takes place in equity, depends upon the intention of the parties and a variety of other circumstances. . . . But, 'a merger will be prevented by equity only, however, for the purpose of promoting substantial justice; it will not prevent a merger, where such prevention would result in carrying a fraud or other unconscientious wrong into effect.' "

A like distinction is made by the court in *Belleville Savings Bank v. Reis,* 136 Ill. 242, wherein the court says:

"When one, who is absolutely entitled in his own right to a charge or incumbrance upon land, becomes the owner in fee of the same land, with no intervening interest or lien, the charge will at law merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party. . . . The premises in such case become the primary fund for the payment of the mortgage, and whoever acquires that fund and the mortgage also must be regarded as having applied the fund to the payment of the mortgage. . . . The indebtedness will be presumed to have been discharged so soon as the holder of it becomes invested with the title to the land upon which it is charged, 'on the principle that a party may not sue himself at law or in equity.' 'The purchaser is presumed to have bought the land at its value less the amount of indebtedness secured thereon, and

equity will not permit him to hold the land and still collect the debt from the mortgagor.' ''

It is urged by plaintiff, however, that defendants by their petition have failed to allege facts which would justify the application of the merger principle to the instant case; that according to defendants' petition plaintiff acquired title to the premises and notes by virtue of an escrow agreement, referred to in the petition, but not set out in its entirety, and that in the absence of the entire escrow agreement the court cannot determine whether or not such a merger actually took place. We cannot agree with this contention. The petition alleges the vesting of the legal title in Urban by the quitclaim deeds, described therein, and his ownership of the mortgage upon that same title, and states that in the purchase and acquisition of said premises, Urban accepted and received credit for the lien then existing by virtue of the recorded trust deed of defendant. These allegations are sufficient upon which to base the legal contention that a merger in law resulted. If the court, acting upon the petition, had vacated the judgment and allowed the plaintiff to plead thereto, it would have been proper for plaintiff, if he considered other provisions of the escrow agreement that those alleged by defendants to be of controlling importance, to have set forth the agreement fully. At this stage of the proceeding it was not incumbent upon defendants to set forth the entire escrow agreement, because, as stated, we believe that sufficient portions thereof and sufficient other allegations are contained in the petition, which, when taken to be true, form a basis in fact upon which the legal contention as to merger may be founded.

Plaintiff insists, however, that notwithstanding the insufficiency of the petition, the rule is well settled that intention is the controlling consideration where it has been made known or can be inferred from the acts and

conduct of the parties, and cites *Hooper v. Goldstein,* 336 Ill. 125, which is a suit at law, to sustain his point. In that case plaintiff brought an action of ejectment, resulting in a finding and judgment in favor of defendants. It appears that the purchaser at a foreclosure sale, to whom the original certificate of sale had been issued, assigned the same as security for a loan, and that a conveyance of the equity of redemption to the original certificate holder was subsequently made. The court held that the intermediate equitable estate thus created by the assignment of the original certificate of sale precluded a resulting merger. And, while the court uses language, as pointed out by plaintiff, to the effect that a merger is not a necessary result of the union of the two estates, but that the intention and interest of the party who unites the two will determine whether or not a merger takes place, the court's conclusion is based upon the fact, as stated in the opinion, that "the evidence in this case does not establish a merger."

From a consideration of all the cases cited by counsels' briefs, we are of the opinion that the rule contended for by defendants is amply supported by the weight of authority, in this State, and when applied to the uncontroverted allegations of the petition as amended, entitled defendants to have the judgment vacated for the purpose of making their defense to plaintiff's suit.

It is further urged by plaintiff that the defendants did not make their application to vacate the judgment by confession against them at the earliest opportunity, and that they are therefore barred from relief by delay, which constitutes laches. It appears from the petition that the first intimation defendants had of the entry of the judgment was on July 10, 1929, and that on October 15, 1929, they first learned of the facts set

forth in their petition; that in the interim negotiations were had between the parties for disposing of the subject matter of the litigation and vacating the judgment; that when these became unavailing, defendants filed a bill in chancery, which was determined adversely to them, and they thereupon filed their petition herein. While it is true that considerable time elapsed between the entry of the judgment and the application to vacate the same, we believe the delay is sufficiently accounted for by allegations in the petition showing the necessity for investigating and ascertaining many complicated transactions, then unknown to defendants, and which required considerable time. It does not appear that the defendants lacked diligence in presenting their motion to such an extent as to be barred by the doctrine of laches from interposing their defense, especially in view of the fact that no other rights intervened.

The sufficiency of the amended petition is further challenged on the ground that it does not state facts with reference to the depreciation of the premises between the time that Urban acquired the property and the date of the judgment and that certain allegations with reference to the extensions of time for payment of the notes are too vague and uncertain. However, in view of our conclusion upon the principal legal question involved, we consider a discussion of these points unnecessary at this time.

For the reasons stated the judgment of the trial court will be reversed and the cause remanded with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded with directions.*

WILSON, P. J., and HEBEL, J., concur.